UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
FREDY AMAYA, SAMUEL ESTRADA,
JOSE ALVARADO, LUIS CAMPOS,
JUAN ANTONIO GARCIA, PAUL
LOPES, THOMAS BAEZ, LEOLADIO
ACOSTA, JOSE HERNANDEZ, JOSE
GARCIA and PEDRO GIL, individually
and on behalf of others similarly situated,

    Plaintiffs,

  -against-

GARDEN CITY IRRIGATION, INC.,
GARDEN CITY MAINTENANCE, INC.,
MICHAEL MOONAN, DONNA
MILCETIC, FIRST NATIONAL
INSURANCE COMPANY OF AMERICA,
RLI INSURANCE COMPANY,
UNIVERSAL BONDING INSURANCE
COMPANY, and ADAM TEDESCO,

    Defendants.
------------------------------------------------------x
FIRST NATIONAL INSURANCE
COMPANY OF AMERICA,

    Third-Party Plaintiff,

  -against-

ADAM TEDESCO,

    Third-Party Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 03-CV-2814 (FB) (RML)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUL 13 2009 ★
BROOKLYN OFFICE
ORIGINAL

```
-----------------------------------------------x
```
ADAM TEDESCO,

       Fourth-Party Plaintiff,

  -against-

GARDEN CITY IRRIGATION, INC., and
DONNA MILCETIC,

       Fourth-Party Defendants.
```
-----------------------------------------------x
```

*Appearances:*

*For Plaintiffs Campos, Juan Antonio Garcia, Lopes, Baez, Acosta, Hernandez, Jose Garcia and Gil:*
ROBERT WISNIEWSKI, ESQ.
225 Broadway, Suite 1020
New York, NY 10007

*For Plaintiffs Estrada and Alvarado:*
MARINA TRUBITSKY, ESQ.
11 Broadway, Suite 861
New York, NY 10004

*For Defendants Garden City Maintenance, Inc., and Moonan, and Defendants/Fourth-Party Defendants Garden City Irrigation, Inc., and Milcetic:*
RAYMOND NARDO, ESQ.
129 Third Street
Mineola, NY 11501

*For Defendant/Third-Party Plaintiff First National Insurance Company of America:*
JONATHAN BONDY, ESQ.
One Boland Drive
West Orange, NJ 07052

*For Defendant/Third-Party Defendant/Fourth-Party Plaintiff Tedesco:*
TODD GARDELLA, ESQ.
225 Old Country Road
Melville, NY 11747

**BLOCK, Senior District Judge:**

       Defendant/Third-Party Defendant/Fourth-Party Plaintiff Adam Tedesco ("Tedesco") appeals Magistrate Judge Levy's September 5, 2008 ruling that plaintiffs' claims against him, first raised in an amended complaint, would relate back to the filing of the original complaint on June 6, 2003. The Court held oral argument on July 8, 2009;

for the following reasons, it overrules Magistrate Judge Levy's ruling and holds that plaintiffs' claims against Tedesco relate back only to December 31, 2007.

I

Plaintiffs are former employees of defendants Garden City Irrigation, Inc., and Garden City Maintenance, Inc. (collectively, "the Corporate Defendants"). They allege that they were not paid the wages required by federal and state labor laws and, further, that they were terminated in retaliation for their complaints about the underpayments.

On June 6, 2003, plaintiffs Fredy Amaya and Samuel Estrada sued the Corporate Defendants, as well as their owner, Donna Milcetic ("Milcetic"), and manager, Michael Moonan ("Moonan"); they also sued several bonding companies. On September 15, 2003, Jose Alvarado, Luis Campos, Juan Antonio Garcia, Paul Lopes, Thomas Baez and Leoladio Acosta joined as plaintiffs.[1]

On May 12, 2005, one of the bonding companies, First National Insurance Company of America, filed a third-party complaint for indemnification against Tedesco, a former shareholder of the Corporate Defendants. Tedesco, in turn, filed a "fourth-party" complaint for indemnification against Garden City Irrigation and Milcetic on October 31, 2005.[2]

---

[1]Although three months elapsed between the June 6th complaint and the September 15th amendment, the parties do not differentiate between the two groups of plaintiffs; accordingly, the Court treats them all as the "original" plaintiffs.

[2]There are also several cross-claims among the defendants. Those claims are not at issue here.

Some three years later, on April 11, 2008, the plaintiffs' sought leave to amend the complain to add Jose Hernandez, Jose Garcia and Pedro Gil as additional plaintiffs. In addition, they sought, on behalf of plaintiffs Estrada, Alvarado and Lopes, leave to assert state labor law claims against Tedesco. In their supporting memorandum of law, plaintiffs' counsel argued that the claims of Hernandez, Garcia and Gil against the defendants (other than Tedesco) should relate back to the filing of the June 2003 complaint; they made no similar argument with respect to the claims of Estrada, Alvarado and Lopes against Tedesco. When Tedesco opposed the motion to add him as a defendant on the ground that the claims against him would be time-barred, plaintiffs argued in reply that "the six-year [statute of limitations] should be counted from December 31, 2007 . . . because Plaintiffs['] counsel informed the court on December 31, 2007 about his intention to amend the Complaint." Pls.' Reply Mem. of Law at 9. Thus, plaintiffs argued, "[o]nly the claims that arose prior to December 31, 2001 will be barred." Id.

In a memorandum and order dated July 28, 2008 ("the July 28th M&O"), Magistrate Judge Levy granted leave to amend over Tedesco's objection. In so doing, he adopted plaintiffs' position that the claims against Tedesco would relate back to December 31, 2007.[3] Tedesco did not appeal; at oral argument, he conceded that he does not object to deeming the claims against him filed as of that date.

---

[3]Magistrate Judge Levy also granted leave to amend the complaint to add Hernandez, Garcia and Gil as plaintiffs; that aspect of the magistrate judge's ruling is not at issue here.

4

Less than two weeks later, on August 8, 2008, Lopes, Alvarado and Estrada changed course and filed a letter motion for reconsideration asking the magistrate judge to instead hold that the claims against Tedesco would relate back to the filing of the June 2003 complaint. In a memorandum and order dated September 5, 2008 ("the September 5th M&O"), Magistrate Judge Levy granted plaintiffs' request, over Tedesco's objection; applying New York law, he concluded (1) that the claims against Tedesco and the original defendants "derived from a common nucleus of operative fact," (2) that Tedesco was "united in interest" with the original defendants, and (3) that plaintiffs had not acted in bad faith in failing to name Tedesco in the original complaint. Sept. 5th M&O at 6-7. On his appeal, Tedesco argues that the claims against him should relate back only to December 31, 2007, as per the July 28th M&O.

## II

Plaintiffs' state-law claims against Tedesco are subject to a six-year statute of limitations. *See* N.Y. Lab. L. § 198(3). Under Magistrate Judge Levy's initial order, plaintiffs' claims for wages for work performed prior to December 31, 2001, were time-barred. Under the September 5th order, however, plaintiffs will be allowed to reach back to June 6, 1997. The propriety of that four-and-a-half year extension is the subject of Tedesco's appeal.

### A. Standard of Review

Magistrate Judge Levy made his relation-back ruling in the context of a motion to amend the complaint as part of his supervisory duties over pretrial matters; normally, the Court will overrule such a ruling only if it "is clearly erroneous or is contrary

5

to law." Fed. R. Civ. P. 72(a). Tedesco argues, however, that the ruling should be treated as a dispositive matter and, accordingly, reviewed *de novo*. *See* Fed. R. Civ. P. 72(b)(3). While the grant of leave to amend is generally considered non-dispositive, *see Tyree v. Zenk*, 2009 WL 1456554, at *3 (E.D.N.Y. May 22, 2009) ("District courts in this circuit have suggested that a magistrate judge's *denial* of a motion to amend a complaint should be treated as dispositive, while a *grant* of the same motion should be treated as non-dispositive."), the Court agrees with Tedesco that a ruling that a claim is or is not time-barred is dispositive, *see Unilever (Raw Materials) Ltd. v. M/T Stolt Boel*, 77 F.R.D. 384, 386 (S.D.N.Y. 1977) (reviewing magistrate judge's rejection of relation back doctrine *de novo*); therefore, the Court will review Magistrate Judge Levy's ruling *de novo*. The Court notes, however, that it would reach the same result even if it were to treat the magistrate judge's ruling as nondispositive.

## B. Applicable Law

Tedesco argues that Magistrate Judge Levy erred in applying the New York law of relation back instead of the requirements set forth in Federal Rule of Civil Procedure 15(c). Under that rule, a claim against an added defendant relates back only if the defendant "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C); these requirements must be satisfied "within the period provided by Rule 4(m) for serving the summons and complaint," *id.* – namely, 120 days from the filing of the original complaint, plus "any additional time resulting from a court-ordered extension."

6

6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1498 (2008 supp.).

Tedesco is correct that Rule 15(c) would not allow plaintiffs' claims against him to relate back. There is no suggestion that he knew about the lawsuit until he was joined as a third-party defendant almost two years after the original complaint was filed; by that time, the 120-day period – which the Court never extended – had long since expired. Plaintiffs apparently recognize this, inasmuch as they have not sought to have their federal labor law claims against Tedesco relate back.

Since 1991, however, Rule 15(c) has further provided that claims raised in an amended complaint will relate back if "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). This provision "make[s] it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." *Id.* cmt. (1991 Amendment). When claims are subject to a state-law statute of limitations – as plaintiffs' state labor law claims are – "if that law affords a more forgiving principle of relation back than the one provided in [Rule 15(c)], it should be available to save the claim." *Id.*

Tedesco argues that the 1991 amendment to Rule 15(c) does not apply to the addition of new parties. Nothing in the rule or its commentary, however, supports such a limited application. Indeed, the amendment's structure suggests otherwise because the use of state-law standards for relation back is listed an alternative to *both* the federal standard governing the addition of claims (set forth in subsection (1)(B)) *and* the federal standard governing the addition of parties (set forth in subsection (1)(C)). Had the drafters of the amendment intended that it not apply to the relation back of claims against new

parties, they would have incorporated it into subsection (1)(B) only. *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994) – cited by Tedesco at oral argument – is not to the contrary because in that case, the claims at issue arose under federal law. *See id.* at 703 ("Under federal law, which governs the accrual of claims brought under §§ 1983 and 1985 . . . , a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." (citations and internal quotation marks omitted)). Thus, as the circuit court explicitly recognized, the 1991 amendment was not at issue. *See id.* at 705 ("Effective December 1, 1991, the Rule was amended . . . in certain respects that are not pertinent here.").

In sum, it is of no moment that plaintiffs' claims against Tedesco would not relate back under Rule 15(c)(1)(C). As Magistrate Judge Levy correctly concluded, it matters only whether those claims relate back under New York law.

## C. Relation Back Under New York Law

New York law allows a claim against a newly added defendant to relate back to the filing of a claim against an original defendant when

> (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

*Buran v. Coupal*, 87 N.Y.2d 173, 178 (1995) (quoting *Brock v. Bua*, 443 N.Y.S.2d 407, 412 (2d Dep't 1981)). In *Buran*, the Court of Appeals held that the plaintiffs' mistake need not be

"excusable" for relation back to apply. *See id.* at 179-82. It reasoned that such a requirement, which had been adopted by the Second Department in *Brock*, "unwisely focuses attention away from what *Brock* assumed to be the primary consideration in such cases – whether the *defendant* could have reasonably concluded that the failure to sue within the limitations period meant that there was no intent to sue that person at all 'and that the matter had been laid to rest as far as he is concerned.'" *Id.* at 180-81 (quoting *Brock*, 443 N.Y.S.2d at 413).

Tedesco does not dispute that plaintiffs' claims against him arose out of the same facts giving rise to their claims against the originally named defendants. He argues, however, that Magistrate Judge Levy erred in holding that plaintiffs' had satisfied the second and third elements.

### 1. *Unity of Interest*

With respect to the second element, "the question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff." *Connell v. Hayden*, 443 N.Y.S.2d 383, 393 (2d Dep't 1981). The rather lofty phrase "jural relationship" simply means a legal relationship giving rise to potential liability. *See id.* ("In other words, when because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together and are therefore united in interest.") The most frequently cited relationship creating a unity of interest is vicarious liability, such as between an employer and employee or a corporation and its agents. *See id.* at 395 ("It has been held that employers (masters) and

9

their employees (servants) are united in interest. . . . Business corporations are liable under the doctrine of *respondeat superior* for the torts of their employees committed within the scope of the corporate business.").

Magistrate Judge Levy did not examine the "jural relationship" between Tesdesco and the original defendants; instead, he concluded that the defendants were all "united in interest" because "the same questions of law and fact predominate over the claims against them," July 28th M&O at 12, and because "unpaid overtime wage claims under New York law and the FLSA are coextensive," Sept. 5th M&O at 6. While it is certainly true that all of the defendants have common cause to argue that plaintiffs were paid all wages due, that is insufficient to create a unity of interest if a particular defendant also has a separate defense to the theory or theories of liability advanced against it. *See Connell*, 443 N.Y.S.2d at 392 ("[W]here one defendant may have a defense which is not available to the other, they cannot be said to be united in interest." (internal quotation marks omitted)).

The complaint and its amendments allege that all of the defendants "have operated as an integrated business unit sufficiently as to make each and every defendant a joint employer of the plaintiffs." Second Am. Compl. ¶ 8. Such an allegation, even if true, does not establish a unity of interest because "a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their *own* actions, not for each other's actions." *Torres-Negron v. Merck & Co.*, 488 F.3d 34, 40 n.1 (1st Cir. 2007). Thus, this theory of liability leaves each defendant with an incentive to argue that the other defendants employed plaintiffs and/or controlled the payment of

wages. *Cf. Connell*, 443 N.Y.S.2d at 394 ("With respect to persons whose only relationship is that of joint tort-feasors ... the defendants' interests are not united because each will seek to show that he was not at fault and that it was the other who caused the injury.").

Plaintiffs also allege, however, that the individual defendants (that is, Tedesco, Milcetic and Moonan) "have vitiated the independent legal existence of the corporate defendants and as a result have made themselves, along with the corporate defendants, jointly and severally, liable." Second Am. Compl. ¶ 9. "As a general rule, the law treats corporations as having an existence separate and distinct from that of their shareholders and consequently, and will not impose liability upon shareholders for the acts of the corporation," *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (1980); however, "the courts will disregard the separate legal personality of the corporation and assign liability to its owners where necessary to prevent fraud or to achieve equity." *Id.* (internal quotation marks and citation omitted). Plaintiffs' "veil-piercing" allegation creates a unity of interest between Tedesco and the Corporate Defendants because, if proven, Tedesco will be personally liable for their obligations. *See Townley v. Emerson Elec. Co.*, 681 N.Y.S.2d 741, 745 (Sup. Ct. Monroe County 1998) (concluding that propriety of piercing corporate veil and establishing unity of interest between corporation and shareholder are "measured by exactly the same standard").

Of course, Tedesco has the defense – not available to the Corporate Defendants – that the corporate veil should not be pierced. New York law, however, ignores the analogous defense that an employee was acting outside the scope of his employment for purposes of the "unity of interest" analysis. *See Connell*, 443 N.Y.S.2d at

11

396 (recognizing that "that approach admittedly forms a slight exception to the logic behind the unity of interest rule"). In any event, plaintiffs' "veil-piercing" allegation also creates a unity of interest between Tedesco and Milcetic because they were co-owners of the Corporate Defendants during the period covered by the complaint; whatever the strength of plaintiffs' theory that the corporate veil should be pierced, it applies in exactly the same manner to both defendants. *Cf. Buran*, 87 N.Y.2d at 179 n.2. (noting that defendants were united in interest because they were "tenants by the entirety/co-owners of Dickson Farm, jointly and severally liable for each other's acts with respect to the property.").

In sum, although the Court does not adopt Magistrate Judge Levy's reasoning, it agrees with his conclusion that plaintiffs have satisfied the "unity of interest" prong of the test for relation back.

*2. Mistake*

With respect to the third prong – whether "the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well," *Buran*, 87 N.Y.2d at 178 – Magistrate Judge Levy concluded that "[i]n practice, the moving party will fall afoul of the third prong only if it acted in bad faith, i.e., 'the omission to name the new party in the original complaint was . . . an attempt to secure some tactical advantage in the litigation.'" Sept. 5th M&O at 6 (quoting *Beck v. Consolidated Rail Corp.*, 394 F. Supp. 2d 632, 640 (S.D.N.Y. 2005)); *accord Walker v. Agro*, 2000 WL 744536, *4 (E.D.N.Y. May 19, 2000) ("[C]ourts considering this element typically deem dispositive the presence or absence of bad faith on the part of

12

the party seeking the amendment." (citing *Yaniv v. Taub*, 683 N.Y.S.2d 35, 38 (1st Dep't 1998))).

In the Court's opinion, the cases holding that the propriety of relation back hinges solely on bad faith read *Buran* too broadly. Although the Court of Appeals excised the "excusability" element of the third prong, it maintained the requirement that the failure to name the newly added defendant be a *mistake*:

> This is not to say . . . that removing the excusability requirement from the third prong would prevent a court from refusing to apply the doctrine in cases where the plaintiff omitted a defendant in order to obtain a tactical advantage in the litigation. *When a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired.*

*Buran*, 87 N.Y.2d at 181 (emphasis added). Thus, the pertinent question is whether the plaintiff acted *intentionally*; acting in bad faith to obtain a tactical advantage is simply one form of intentional conduct. *See Beck*, 394 F. Supp. 2d at 640 ("As there is no indication that Plaintiffs intentionally omitted Penn Lines or Norfolk from the original complaint, the third element is satisfied."); *Blakeslee v. Royal Ins. Co. of Am.*, 1998 WL 209623, *6 (S.D.N.Y. Apr. 29, 1998) ("[U]nder this third prong of the test, courts should focus on whether the party invoking the relation back doctrine acted intentionally or in bad faith in not including all the appropriate parties in the original pleading."); *DeLuca v. Baybridge at Bayside Condominium I*, 772 N.Y.S.2d 876, 877 (2d Dep't 2004) ("[T]here is no indication that the plaintiff intentionally failed to join the Baybridge defendants as parties to the 1998 action or acted in bad faith.").

13

Moreover, this case is unique in that implicates not only plaintiffs' conduct at the time the June 2003 complaint was filed, but also their subsequent conduct. The Court agrees with Magistrate Judge Levy that plaintiffs' failure to name Tedesco in the June 6th complaint was not the result of bad faith. Nor does it appear to have been intentional; although Tedesco argues that plaintiffs were aware that he was their supervisor, his potential liability for unpaid wages arising out of his role in the Corporate Defendants was not apparent at the time the June 2003 complaint was filed because he had sold his ownership interest several months earlier.

Plaintiffs' subsequent conduct, however, dispels any notion that their request for relation back was based on a mistake. Plaintiffs were aware of Tedesco's role at least as of May 12, 2005, when he was added as a third-party defendant, yet they did not seek to add him as a direct defendant for almost three years. At oral argument, plaintiffs' current counsel attributed the delay to former counsel, but this is not entirely accurate: current counsel began representing plaintiffs in November 2006, yet another year elapsed before counsel sought to add Tedesco as a defendant. It was also current counsel who drafted the memorandum of law seeking leave to amend without raising the issue of relation back as to the claims against Tedesco, as well as the reply memorandum taking the position that those claims should relate back to December 31, 2007.[4]

---

[4] In their motion for reconsideration, plaintiffs posited that the July 28th M&O's reference to December 31, 2007, was a "scrivener's error" that should have read "December 31, 2001." There was no such error. Relation back refers to the date on which a newly added claim is deemed filed; how far back the claim may reach before running up against the statute of limitations is a separate question. More importantly, the claimed error has nothing to do with plaintiffs' position that the claims against

14

At oral argument, plaintiffs' counsel candidly acknowledged that their decision to seek to have the claims against Tedesco relate back to the June 6th complaint was a change in strategy based on a review of the law. Be that as it may, the "linchpin" of the relation back doctrine is "notice to the defendant within the applicable limitations period." *Buran*, 87 N.Y.2d at 180; therefore, plaintiffs' actions (and inaction) must be viewed from Tedesco's perspective. Since an attorney's conduct is binding on his or her client, *see, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."), it was only reasonable for Tedesco to draw from plaintiffs' counsel's conduct the inference that "there was no intent to sue [him] at all and that the matter [had] been laid to rest as far as he is concerned." *Buran*, 87 N.Y.2d at 181 (citation and internal quotation marks omitted).

Plaintiffs have argued that allowing the claims against Tedesco to relate back to June 6, 2003, will not prejudice his ability to mount a defense to those claims. In the context of the relation-back doctrine, however, prejudice or the absence thereof comes into play only if the failure to name the new defendant in the original complaint was a mistake. *See Buran*, 87 N.Y.2d at 181 ("Similarly, a court would be justified in denying a plaintiff the benefit of the doctrine in order to prevent delay or disruption in the normal course of the lawsuit."). Since there was no mistake here, the question of prejudice is immaterial.

---

Tedesco should relate back to the filing of the June 6th complaint.

15

## III

In sum, the Court concludes that plaintiffs' failure to seek relation back of their claims against Tedesco was not the result of a mistake. Magistrate Judge Levy's holding is, accordingly, overruled; the state-law claims of Lopes, Alvarado and Estrada against Tedesco shall relate back only to December 31, 2007.

**SO ORDERED.**

S/FB

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 10, 2009