```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
FREDY AMAYA, SAMUEL ESTRADA,
JOSE ALVARADO, LUIS CAMPOS,
JUAN ANTONIO GARCIA, PAUL
LOPES, THOMAS BAEZ, LEOLADIO
ACOSTA, JOSE HERNANDEZ, JOSE
GARCIA and PEDRO GIL, individually
and on behalf of others similarly situated,

        Plaintiffs,

    -against-                                          **MEMORANDUM AND ORDER**
                                                      Case No. 03-CV-2814 (FB) (RML)
GARDEN CITY IRRIGATION, INC.,
GARDEN CITY MAINTENANCE, INC.,
MICHAEL MOONAN, DONNA
MILCETIC, FIRST NATIONAL
INSURANCE COMPANY OF AMERICA,
RLI INSURANCE COMPANY,
UNIVERSAL BONDING INSURANCE
COMPANY, and ADAM TEDESCO,

        Defendants.
------------------------------------------------------x
FIRST NATIONAL INSURANCE
COMPANY OF AMERICA,

        Third-Party Plaintiff,

    -against-

ADAM TEDESCO,

        Third-Party Defendant.
------------------------------------------------------x
```

```
-----------------------------------------------x
```
ADAM TEDESCO,

        Fourth-Party Plaintiff,

  -against-

GARDEN CITY IRRIGATION, INC., and
DONNA MILCETIC,

        Fourth-Party Defendants.
```
-----------------------------------------------x
```

*Appearances:*

*For Plaintiffs Campos, Juan Antonio Garcia, Lopes, Baez, Acosta, Hernandez, Jose Garcia and Gil:*
ROBERT WISNIEWSKI, ESQ.
225 Broadway, Suite 1020
New York, NY 10007

*For Plaintiffs Estrada and Alvarado:*
MARINA TRUBITSKY, ESQ.
11 Broadway, Suite 861
New York, NY 10004

*For Defendants Garden City Maintenance, Inc., and Moonan, and Defendants/Fourth-Party Defendants Garden City Irrigation, Inc., and Milcetic:*
RAYMOND NARDO, ESQ.
129 Third Street
Mineola, NY 11501

*For Defendant/Third-Party Plaintiff First National Insurance Company of America:*
JONATHAN BONDY, ESQ.
One Boland Drive
West Orange, NJ 07052

*For Defendant/Third-Party Defendant/Fourth-Party Plaintiff Tedesco:*
TODD GARDELLA, ESQ.
225 Old Country Road
Melville, NY 11747

**BLOCK, Senior District Judge:**

        Plaintiffs are former employees of defendants Garden City Irrigation, Inc., and Garden City Maintenance, Inc. (collectively, "the Corporate Defendants"). They allege that they were not paid all wages due to them and, further, that they were terminated in retaliation for their complaints about the underpayments. Proceeding under the federal

2

Fair Labor Standards Act, 29 U.S.C. §§ 201-19, and New York law, they have sued the Corporate Defendants, as well their principal shareholder, Donna Milcetic ("Milcetic"), manager, Michael Moonan ("Moonan"), former shareholder, Adam Tedesco ("Tedesco"), and several of the sureties who provided payment and performance bonds on the Corporate Defendants' projects. Plaintiffs' claims have triggered a chain reaction of state-law indemnification claims to determine which defendant or defendants will ultimately pay any wages found to be owing.

Three motions are currently before the Court. Because of their disparate natures, the Court treats each separately.

I

The Corporate Defendants, Micetic, Moonan and Tedesco all move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the state-law claims of plaintiffs Samuel Estrada ("Estrada") and José Alvarado ("Alvarado") on the ground that those claims are barred by releases in which those two plaintiffs promised to abandon "any and all claims [they] have, had or may have had for wages and benefits." Decl. of Raymond Nardo, Esq., Exs. 1-2. In response, those plaintiffs argue (A) that defendants' motion improperly relies on extrinsic evidence, (B) that the releases are invalid because they were executed without supervision, and (C) that the releases are invalid because they were not entered into knowingly and voluntarily.

A. Extrinsic Evidence

As a general matter, the Court must decide a Rule 12(b)(6) motion based on "the facts as asserted within the four corners of the complaint, the documents attached to

the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Many courts, however – including the Second Circuit – have recognized, albeit with little or no explanation, that the defense of release is a proper ground for such a motion. *See Burke v. Lash Work Env'ts, Inc.*, 2011 WL 286188, at *2 (2d Cir. Jan. 31, 2011) ("[W]hether the defendants' withdrawal liability obligations and the other ERISA claims are extinguished by the Settlement Agreement and Release are questions whose resolution is properly addressed by the District Court on a Rule 12(b)(6) motion.") (summary order); *Simel v. JP Morgan Chase*, 2007 WL 809689, at *6 (S.D.N.Y. Mar. 19, 2007) (granting motion to dismiss based on release).

In any event, the Court can remove any barrier to considering the releases by converting the motion to one for summary judgment pursuant to Rule 12(d). Estrada and Alvarado have had notice of the possibility of conversion since the Court raised it at an informal pre-motion conference and, indeed, have submitted declarations supporting their claim that the releases were not signed knowingly and voluntarily. Their argument that conversion is premature until discovery is completed is unpersuasive; any additional bases for invalidating the release should also be within their own knowledge, making formal discovery unnecessary.

## B. Supervision of Settlement

Settlement of FLSA claims requires the supervision of either the Secretary of Labor or the district court. *See, e.g., Simel*, 2007 WL 809689, at *4 (citing 29 U.S.C. § 216(c)). Defendants acknowledge that there was no such supervision of the releases at issue here and, accordingly, do not seek dismissal of Estrada and Alvarado's FLSA claims.

Without any citation of authority, Estrada and Alvarado argue that the same principle applies to the settlement of wage and hour claims under New York law. The district courts of this circuit have roundly rejected that argument. *See, e.g., id.; Wright v. Brae Burn Country Club, Inc.*, 2009 WL 725012, at *4 (S.D.N.Y. Mar. 20, 2009) ("There is no express restriction on the private settlement of waiver of wage and hour claims under New York law."); *cf. Manning v. Joseph*, 304 N.Y. 278, 282 (1952) ("We see no merit to petitioners' contentions that the releases are against public policy and prohibited by . . . section 220 of the [New York] Labor Law. . . .").

## C. Knowing and Voluntary

In support of their claim that they did not execute the releases knowingly and voluntarily, Estrada and Alvarado attest that their limited command of English prevented them from understanding the effect of the releases. A contract is void "if there is no meeting of the minds, i.e., if the parties understand the contract's material terms differently." *Gessin Elec. Contractors, Inc. v. Wall Assocs., LLC*, 903 N.Y.S.2d 26, 28 (1st Dep't 2010).[1]

Here, however, there was no misunderstanding. Estrada and Alvarado have each attested to his understanding of the releases in his native Spanish:

> To my knowledge the release simply stated that I was accepting a settlement of $12,500 for unpaid overtime wages and that I was still able to proceed with federal claims against the Defendants.

---

[1] The validity of a release settling state-law claims is a question of state law. *See Consolidation Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639, 646 (S.D.N.Y. 2004).

5

Pls.' Mem. of Law, Exs. D-E (English translations of Spanish originals). That precisely comports with the understanding of the defendants, who, as noted, have not moved to dismiss any federal claims. Since Estrada and Alvarado had a correct understanding of the releases, their claimed language difficulties did not render their execution of the releases unknowing.

With respect to voluntariness, Estrada and Alvarado claim that they felt "coerced and pressured" to sign documents they did not understand. *Id.* Unlike lack of mutual understanding, however, duress renders a contract "not necessarily void but merely voidable." *Leader v. Dinkler Mgmt. Corp.*, 272 N.Y.S.2d 397, 398 (2d Dep't 1966), *aff'd*, 20 N.Y.2d 393 (1967). A party to a voidable contract "must act promptly to repudiate it," *id.*; retention of contractual benefits is inconsistent with repudiation and, instead, constitutes ratification. *See Cappelli Enters., Inc. v. F&J Cont'l Food Corp.*, 792 N.Y.S.2d 553, 610 (2d Dep't 2005) ("Where a party has accepted the benefits of an agreement and then seeks to repudiate the agreement on the ground of coercion, it must do so in a timely fashion or any objection is waived."). Estrada and Alvarado have retained the proceeds given in consideration for the releases for more than eight years. As a result, any claim that the releases were obtained by "coerc[ion] and pressur[e]" is no longer viable.

## D. Conclusion

Defendants' converted motion for summary judgment on Estrada's and Alvarado's state-law claims is granted. Those claims are dismissed with prejudice.

II

Defendant First National Insurance Company of America ("First National"), one of the bonding companies, moves for summary judgment on its state-law claim for contractual indemnification against Tedesco. In particular, First National seeks to recover the amounts it paid in settlement of plaintiffs' claims on its bonds, as well as attorney fees and costs it incurred litigating those claims and pursuing its claim for indemnification.

First National's claim arises from a "General Agreement of Indemnity for Contractors" ("GAIC"). Under the GAIC, First National had "the exclusive right to determine . . . in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed." Certification of Kirk Austin, Ex. A. Under New York law, which governs, such language entitles a surety to indemnification as long as "it acted in good faith and the amount paid was reasonable." *Peerless Ins. Co. v. Talia Constr. Co.*, 708 N.Y.S.2d 223, 224 (4th Dep't 2000); *see also International Fidelity Ins. Co. v. Spadafina*, 596 N.Y.S.2d 453, 454 (2d Dep't 1993) (holding that agreement with similar language was to be "scrutinized only for good faith and reasonableness as to the amount paid"). Tedesco challenges (A) First National's good faith in settling plaintiffs' claims and (B) the reasonableness of the amount of its claim for attorney fees.

**A. Good Faith**

Tedesco's good-faith challenge is premised solely on the releases discussed above. He argues that First National should have defended against plaintiffs' claims based on the releases, and that its failure to do so amounts to bad faith.

Tedesco is incorrect. In this context, New York courts have equated "bad faith" with fraud or collusion. *See, e.g., Peerless*, 708 N.Y.S.2d at 224 ("Defendants submitted no evidence that plaintiff acted in bad faith, i.e., that plaintiff engaged in fraud or collusion."). Tedesco has not offered any evidence that First National's decision to settle was the product of fraud or collusion with the plaintiffs.

As the Court noted in *Travelers Indemnity. Co. v. Harrison Construction Group Corp.*, 2008 WL 4725970 (E.D.N.Y. Oct. 22, 2008), there may be other bases for a finding that a surety acted in bad faith in settling a claim. *See id.* at *5 n.9 (recognizing broader definitions of bad faith in other contexts). It is clear, however, that a surety's failure to pursue a viable defense does not suffice. *See Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 700 (3d Dep't 2004) (surety entitled to indemnity "regardless of whether the principal was actually in default or liable under its contract with the obligee"); *Ebasco Constructors, Inc. v. A.M.S. Constr. Co.*, 599 N.Y.S.2d 866, 867 (2d Dep't 1993) ("[N]otwithstanding any possible defenses, we cannot find an absence of good faith on the part of the surety.").

## B. Reasonableness

Tedesco raises two arguments as to the reasonableness of First National's claim for attorneys fees and costs. First, he argues that the fees and costs it paid ($57,347.10) were disproportionate to the settlement amount ($22,500.00). As a matter of common sense, however, there is not necessarily any correlation between the amount of

fees incurred defending a claim and the results obtained.[2] Had First National's counsel negotiated a smaller settlement amount, their fees would be even more disproportionate; Tedesco cannot seriously argue that a defense attorney should be penalized for obtaining a more favorable result for his or her client. Indeed, the most favorable result – a finding of no liability – would have required First National to spend far more in attorney fees and costs than it actually spent in obtaining the settlement. In sum, since Tedesco has not pointed to any specific excessive charges, the Court rejects his argument that disproportionality, standing alone, is sufficient to demonstrate unreasonableness.

Second, Tedesco argues that First National improperly included fees and costs incurred pursuing its indemnity claims against him and the other indemnitors. While this is not, strictly speaking, an issue of reasonableness, the Court agrees that such fees and costs are not within the ambit of the GAIC.

> The GAIC provides that First National is entitled to indemnity for
>
> > [a]ll loss, costs and expenses of whatsoever kind and nature, including court costs, *reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires [the indemnitors] to make arrangements for Surety's legal representation)*, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the [indemnitors].
>
> Certification of Kirk Austin, Ex. A (emphasis added). This is the sole provision First

---

[2] Even in the context of plaintiffs' attorneys fees, proportionality is only one of several factors to be considered. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under [42 U.S.C.] § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.").

9

National invokes as a basis for fees incurred pursuing its claims for indemnity.

The language in parentheses, however, makes it clear that "reasonable attorney fees" refers only to fees incurred defending claims made against First National as a result of its bonds. It makes perfect sense that the GAIC would allow First National to retain its own counsel or require the indemnitors to furnish counsel to defend such claims. By contrast, it makes no sense that First National would allow, or could require, the indemnitors to hire counsel to pursue claims against them. This logic is consistent with the result reached in New York cases addressing similar agreements. *See Grimsey v. Lawyers Title Ins. Corp.*, 31 N.Y.2d 953, 955 (1972) ("The award for the amount of plaintiffs' counsel fees was proper insofar as it embraced the cost of services rendered in defense of the claim of title interposed against the plaintiffs but was unauthorized to the extent that it included attorneys' fees incurred in prosecuting the action brought against the title insurance company...."); *Bank of New York, Albany v. Hirschfeld*, 399 N.Y.S.2d 329, 330 (3d Dep't 1977) (denying surety fees incurred pursuing indemnification based on *Grimsey*).

## C. Conclusion

First National is entitled to summary judgment on its indemnification claim against Tesdesco, but only with respect to the settlement proceeds paid and fees and costs incurred in connection with plaintiffs' claims on its bonds.

First National claims total losses of $79,847.10. By the Court's calculation, $11,370.44 of that amount represents fees and costs incurred pursing its indemnification claims. Excluding that amount yields a compensable loss of $68,476.66. Since it is undisputed that Tedesco is entitled to a setoff for $25,000 paid and to be paid by his co-

indemnitors, judgment shall be entered against Tedesco and in favor of First National in the amount of $43,476.66.

III

Tedesco, in turn, moves for partial summary judgment on his state-law claim for contractual indemnification against GCI and Milcetic. He argues that an agreement he signed with those defendants as part of the sale of his ownership interest obligate them to indemnify him for his liability in this action, as well as the attorney fees and costs he incurs.[3] In response, GCI and Milcetic argue (A) that Tesdesco's claim does not fall within the Court's supplemental jurisdiction, (B) that the indemnity agreement does not cover Tedesco's personal liability and (C) that questions of fact regarding Tedesco's conduct preclude summary judgment.

A. Supplemental Jurisdiction

In a federal-question case, the district court has supplemental jurisdiction over all claims that are "so related to [the claims within the court's original jurisdiction] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This condition is satisfied when the claims all "derive from a common nucleus of operative fact," such that a party "would ordinary be expected to try them all in one judicial proceeding." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting, ultimately, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

---

[3] At this stage, Tedesco is liable to First National, *see supra* Part II, and potentially liable to plaintiff Paul Lopes ("Lopes"). The claims of Estrada and Alvarado have been released, *see supra* Part I, and no other plaintiff has asserted a claim against Tedesco.

Other than a state-law claim for the same relief, it is difficult to imagine a claim more clearly within a court's supplemental jurisdiction than a claim seeking indemnity for liability on the main claim. *See, e.g., Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 72 (2d Cir. 1982) ("[W]e now are convinced that the district court did continue to have ancillary, or incidental, jurisdiction over the cross-claims [for indemnity]."); *Greenwald v. American Medcare Corp.*, 666 F. Supp. 489, 491-92 (S.D.N.Y. 1987) ("It is clear in this case that the main claim, cross-claims and third-party claims [for indemnity and contribution] arise out of a common nucleus of operative facts. . . .").

In support of their jurisdictional argument, GCI and Milcetic cite *Siteworks Contracting Corp. v. Western Sur. Co.*, 461 F. Supp. 2d 205 (S.D.N.Y. 2006). But *Siteworks* was a diversity case; a court cannot exercise supplemental jurisdiction in such a case if the supplemental claim is asserted by an intervening plaintiff whose presence would destroy complete diversity. *See* 28 U.S.C. § 1367(b). Section 1367(b) was the explicit basis for the decision in *Siteworks*, *see* 461 F. Supp. 2d. at 211, and has no application here.

There is, moreover, no basis for the Court to decline, in its discretion, to exercise its supplemental jurisdiction under § 1367(c): Dismissal under § 1367(c)(3) is not available because plaintiffs' federal claims remain pending. Since Tedesco's claim does not predominate over those claims or raise any novel or complex state-law issues, the Court cannot invoke § 1367(c)(1) or (2), either. Even if one of those circumstances obtained, the Court would retain supplemental jurisdiction on the ground that it would be a complete waste of judicial resources to require Tedesco to "start over" in state court more than five years after first asserting his claim against GCI and Milcetic.

## B. Personal Liability

It is undisputed that Tedesco signed the GAIC with First National in both his corporate and individual capacities. GCI and Milcetic argue that the indemnity agreement covers only Tedesco's liability as a corporate officer.

In the first place, that argument has no bearing on GCI's and Milcetic's obligation to indemnify Tedesco to the extent he is held liable on Lopes's claims. More importantly, it is based on a gross misreading of the indemnity agreement.

The agreement on which Tedesco relies requires GCI and Milcetic to indemnify him for "any *personal liability* of Tedesco arising from his status as an employee, shareholder, officer, director or agent of [the Corporate Defendants]." Aff. of Adam Tedesco, Ex. A (emphasis added). It thus clearly contemplates Tedesco's personal liability; its only limitation is on liability "arising from" Tedesco's role. The quoted language is broadly construed to mean "originating from, incident to, or having connection with." *Regal Constr. Corp. v. National Union Fire Ins. Co.*, 15 N.Y.3d 34, 38 (2010) (citation omitted).

Tedesco's potential liability to Lopes[4] clearly arises from his association with

---

[4]Unlike his liability to First National, which is fixed, Tesdesco's liability to Lopes is contingent on Lopes's ability to prevail on his claims. A district court has jurisdiction to declare rights and responsibilities under a contingent liability as long as the contingency is not merely hypothetical. *See Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) ("That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. [C]ourts should focus on the practical likelihood that the contingencies will occur[.]" (citations and internal quotation marks omitted)). Indeed, courts are often called upon to adjudicate an indemnity claim before liability on the underlying claim has been fixed, *see id.*, and such adjudications may serve the salutary purpose of facilitating settlement.

13

the Corporate Defendants, and GCI and Milcetic do not contend otherwise. But it is just as clear that Tedesco was obligated to sign the GAIC with First National in his individual capacity because of the same association.

## C. Tedesco's Conduct

The indemnity agreement does not cover Tedesco's liability arising from conduct that was "negligent, willful, reckless or criminal." Aff. of Adam Tedesco, Ex. A. GCI and Milcetic contend that genuine issues of material fact remain regarding Tedesco's conduct. In support of that contention, Moonan (the Corporate Defendants' manager) has attested that Tedesco's roles included "set[ting] wages and hours for employees" and "gather[ing] information for payrolls." Decl. of Michael Moonan, ¶ 4. Moonan's statements are corroborated by sample payrolls signed by Tedesco. *See* Decl. of Raymond Nardo, Esq., Ex. 4.

Although this evidence is hardly conclusive, it is sufficient to defeat summary judgment. If, as Moonan attests, Tedesco was responsible for assigning hours and preparing payrolls, a jury could reasonably infer that he knew or should have known the number of hours the plaintiffs worked. If it were to conclude that the payrolls did not match actual hours worked, it could also reasonably infer that the failure to pay all wages due was the result of Tedesco's negligence, recklessness or willfulness. Such findings would defeat Tedesco's entitlement to indemnification.

## D. Conclusion

Because there are genuine issues of material fact regarding Tedesco's role in the alleged failure to pay plaintiffs' wages, his motion for summary judgment must be

14

denied.

## IV

In sum:

- Defendants' converted motion for summary judgment on Estrada's and Alvarado's state-law claims is granted, and those claims are dismissed with prejudice.

- First National's motion for summary judgment on its indemnity claim against Tedesco is granted, and the Clerk shall enter judgment accordingly in the amount of $43,476.66.

- Tedesco's motion for partial summary judgment on his indemnity claim against GCI and Milcetic is denied.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 15, 2011